**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Case Nos. 1:96-cr-05067 JLT, |
|  | 1:97-cr-05033 JLT |
| Plaintiff, |  |
|  | ORDER DENYING MOTION FOR |
| v. | REDUCTION IN SENTENCE |
|  |  |
| MICHAEL WAYNE NORTHCUTT, | (Doc. 60 in Case No. 96-cr-5067 and Doc. 9 in |
|  | Case No. 97-cr-5033) |
| Defendant. |  |

Michael Wayne Northcutt moves to reduce his prison sentence under 18 U.S.C.

§ 3582(c)(1)(A).  He cites his need for medical care and intervening changes in federal sentencing

law that were enacted as part of the First Step Act of 2018 (FSA).  As explained below, Northcutt

has not demonstrated that his medical care or changes in the law are "extraordinary and

compelling reasons" for a sentence reduction under § 3582(c)(1)(A)(i), and he has not

demonstrated that the relevant sentencing factors justify a reduction.  His motion is **DENIED**.

**BACKGROUND**

Between October and December 1995, Northcutt robbed four banks in Turlock, San

Bruno, Modesto, and Upland, California.  (*See* PSR ¶¶ 19, 22, 24, 66.[1])  He used a gun in each

---

[1]  Citations in this format refer to the Presentence Investigation Report (PSR) prepared in the first case captioned above.  The Court has referred only to those portions of the PSR that the parties have disclosed publicly and about which they raise no dispute.

1

robbery, pointing it at bank tellers as he cursed at them, threatened to kill them, and demanded cash in large bills. (*See id.*)  During one of the robberies, his gun discharged twice, possibly by accident, and one of the shots struck someone; the victim fell to the ground in an apparent state of shock but survived. (*Id.* ¶ 26.)

Police apprehended Northcutt after the Upland robbery. (*See id.* ¶ 66).  He fled from them in a car, driving through a shopping complex and onto a sidewalk at about 50 miles per hour, narrowly missing several people. (*Id.*)  Officers eventually arrested him after he left his car and ran onto a freeway, where he was pointing his gun at people as they drove by in an apparent attempt to stop someone. (*Id.*)  Officers found methamphetamine and several rounds of ammunition when they searched him. (*Id.*)  They also confirmed that at least one of the guns he used had been reported stolen in Merced County, California. (*Id.*)

Northcutt was ultimately indicted in connection with each robbery.  Turlock and Modesto are within this district, San Bruno is within the Northern District of California, and Upland is within the Central District of California.  Cases were filed in each district.[2]

Judgment was entered in the Central District action first, on August 16, 1996, after a jury reached a guilty verdict following a three-day trial. (*See* Case No. 5:95-cr-00020 RT, Docs. 37–40, 56.)  Northcutt was sentenced to a prison term of 130 months. (Case No. 5:95-cr-00020 RT, Doc. 55.)

In the case filed in this Court,  Northcutt reached a plea agreement and entered a guilty plea a few months later. (Case No. 96-05067 JLT, Docs. 14, 15.)  The plea agreement permitted him to avoid prosecution for another similar suspected robbery in Sacramento (PSR ¶ 5).  In the case originally filed in the Northern District, he waived an indictment and also entered a guilty plea, and after that action was transferred to this district, he was sentenced in both cases jointly. (*See* Case No. 96-5067 JLT, Doc. 18, Case No. 1:97-cr-05033 JLT, Docs. 2, 3.)  He received a

---

[2]  The action filed in the Central District of California is number 5:95-cr-00020 RT.  The action filed in this district is number 1:96-cr-05067 JLT.  The action originally filed in the Northern District and transferred to this district is number 1:97-cr-05033 JLT in this District and 3:96-cr-00439 SI in the Northern District.  Unless otherwise noted, documents cited in this order are those filed in Case No. 1:96-cr-05067 JLT.

151-month prison sentence on three armed bank robbery charges under 18 U.S.C. § 2113(a) and (d), with each sentence to be served concurrently. (Doc. 20 at 2.) In addition, Northcutt received a 240-month sentence on a charge under 18 U.S.C. § 924(c), to be served consecutively to the charges under § 2113, for a total sentence of 391 months. (*Id.*) Thirty-one of those months, however, he would serve concurrently with his sentence in the Central District action, with the remaining 360 to be served consecutively. (*Id.*) In total, then, Northcutt received a sentence of 490 months in connection with the four robberies: 130 months in connection with the Upland robbery and 360 months in connection with the robberies in Turlock, San Bruno, and Modesto.

In 2004, while Northcutt was serving his prison sentence, he was indicted on charges of assault with a dangerous weapon with intent to do bodily harm, assault resulting in serious bodily injury, and possession of contraband in prison. *See* Case No. 2:04-cr-00418 GPS, Doc. 1 (citing 18 U.S.C. §§ 113(a)(3), (6) and 1791(a)(2) and (3)). A jury reached a guilty verdict on each charge, and the court sentenced Northcutt to 125 months' imprisonment, to be served consecutively to his previously imposed sentences. *See* Case No. 2:04-vr-00418 GPS, Docs. 204, 239. According to the unpublished memorandum disposition in his unsuccessful appeal, the evidence showed Northcutt had chased and struck at his victim with a knife. *See United States v. Northcutt*, 234 F. App'x 789, 791 (9th Cir. 2007).

Northcutt also has a long record of prison discipline that did not lead to criminal charges, including threats, assaults, theft, causing damage to prison property, and drug and alcohol violations, among other things. (*See* Doc. 71-1 at 11–30.) Most of these charges are based on events that are now several years in the past, but some are more recent, including discipline for making threats of bodily harm and insolence to staff in 2021 and 2023, respectively. (*See id.* at 12–13.) His disciplinary charges have resulted in a loss of more than a thousand days' good conduct time. (*See id.*) Accounting for his remaining good conduct time, he is expected to be released in 2041. (Doc. 71-1 at 2.)

Northcutt now moves to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A). He filed a pro se motion in October 2024. (Doc. 60.) The Court appointed the Office of the Federal Defender to represent him in connection with that motion, and counsel filed a supplemental brief

on his behalf.  (Docs. 63, 67.)  He argues in that brief that there is an "extraordinary and compelling" reason to reduce his sentence under the terms of § 3582(c)(1)(A)(i): if he had been sentenced today, he contends, he would have received a much shorter prison term for the conviction under § 924(c), citing changes passed as part of the FSA.  The government opposes his motion (Doc. 71), and Northcutt has replied (Doc. 78).  The Court took the matter under submission without holding a hearing.

Northcutt also contends in a separately filed pro se supplement and reply that his medical conditions and a lack of medical care are additional "extraordinary and compelling" reasons for a reduction.  (Docs. 68, 77.)  Because Northcutt is represented by counsel in connection with his pending motion, he may not file documents on his own behalf.  *See, e.g.*, *United States v. Brayshaw*, No. 14-00088, 2018 WL 534120, at *1 (E.D. Cal. Jan. 23, 2018).  A client who wishes to make his own arguments on a pro se basis "must comply with Local Rule 182 to obtain an order for his substitution in place of counsel."  *United States v. Nebel*, No. 08-0212, 2019 WL 5550021, at *1 (E.D. Cal. Oct. 28, 2019), *report and recommendation adopted*, 2020 WL 469373 (E.D. Cal. Jan. 29, 2020).  The Court has nevertheless considered Northcutt's pro se filings, as doing so will neither unduly prejudice the government nor lead to a different result.

## STANDARD OF DECISION

A judgment of conviction that imposes a prison sentence may not be modified except in limited circumstances.  18 U.S.C. § 3582(c); *Dillon v. United States*, 560 U.S. 817, 824 (2010).  A sentence reduction or release may be granted in extraordinary cases under § 3582(c)(1)(A).  *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020).  Under the FSA, a defendant (or the Director of the Bureau of Prisons on the defendant's behalf) may move for a sentence reduction in the district court.  18 U.S.C. § 3582(c)(1)(A).  The district court may reduce a term of imprisonment if "(1) the defendant exhausted administrative remedies; (2) 'extraordinary and compelling reasons' warrant a sentence reduction; (3) a sentence reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission; and (4) the district court considered the factors set forth in 18 U.S.C. § 3553(a)."  *United States v. Chen*, 48 F.4th 1092, 1094-95 (9th Cir. 2022) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  It is the

4

defendant's burden to show he is eligible for a reduction. *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022). A district court may deny a motion under § 3582(c)(1)(A) if a defendant does not satisfy any one of the four requirements above. *Id.* at 945.

## DISCUSSION

The parties agree Northcutt has satisfied the first requirement, i.e., to exhaust his administrative remedies. (*See* Docs. 67 at 6; 71 at 4.)

With respect to the second and third requirements, Northcutt argues the sentence he received is much longer than the sentence he would have received if convicted today, and he cites the Sentencing Commission's policy statement in § 1B1.13(b)(6). That policy statement provides that an "unusually long sentence" can sometimes present an extraordinary and compelling reason for a reduction:

> Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

The government acknowledges this policy statement and agrees this Court may "consider intervening changes in the law" when it decides whether there is an "extraordinary and compelling" reason for a reduction under § 3582(c)(1)(A). (Doc. 71 at 6.) At the same time, however, the government cites cases in which courts from outside the Ninth Circuit have held otherwise, including in some opinions the Ninth Circuit has expressly declined to follow. (*See id.*); *see also Chen*, 48 F.4th at 1096 (declining to follow *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), cited in the government's opposition). This Court will, of course, follow Congress's statutory instructions by ensuring that any sentencing reduction "is consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A), including the provision quoted above, and will follow the Ninth Circuit's binding interpretations

of the relevant law.

As noted, Northcutt's primary argument is based on changes to federal sentencing law that were passed as part of the FSA.  His arguments focus on 18 U.S.C. § 924(c), which defines what penalties apply to "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."  18 U.S.C. § 924(c)(1)(A).  Before the FSA came into effect, a person could be charged for a "second or subsequent" offense—which carried a mandatory and consecutive twenty- or twenty-five-year sentence[3]—based on a "first" offense that had not become final at the time of the "second or subsequent" offense, even if that "first" offense was just another charge in the very same case.  *See United States v. Jones*, 482 F. Supp. 3d 969, 978 (N.D. Cal. 2020) (citing *Deal v. United States*, 508 U.S. 129, 132 (1993)).  This application of § 924(c) came to be known "colloquially" as the "stacking" of charges under § 924(c).  *Chen*, 48 F.4th at 1094.

Section 403(a) of the First Step Act limited this practice by imposing the enhanced penalty only if the violation "occurs after a prior conviction under this subsection has become final."  *See* First Step Act, Pub. L. 115-391, Title IV, § 403(a), 132 Stat 5194, 5221–22 (2018); *see also Chen*, 48 F.4th at 1094 (summarizing this change).  Multiple § 924(c) convictions are otherwise subject to 5-year (possession), 7-year (brandishing), or 10-year (discharging) consecutive mandatory minimums.  *See* 18 U.S.C. §§ 924(c)(1)(A), (B); *but see* 18 U.S.C. § 924(c)(1)(B)(ii) (imposing thirty-year minimum for use of a "machine gun," "destructive device," "firearm silencer," or "firearm muffler").

Congress did not make these changes retroactive.  *See* First Step Act, Pub. L. 115-391, § 403(b), 132 Stat. 5222 (2018).  But as noted, the Sentencing Commission's policy statements on § 3582(c)(1)(A) make clear that "a change in the law," even a change that is not retroactive, "may be considered in determining whether the defendant presents an extraordinary and

---

[3]  In 1998, Congress increased the mandatory minimum sentence for a second or subsequent § 924(c) conviction from twenty years to twenty-five years. *Compare* 18 U.S.C. § 924 (1996) *with* 18 U.S.C. § 924 (1998); *see also United States v. Hungerford*, 465 F.3d 1113, 1119 (9th Cir. 2006) (Reinhardt, S., concurring).  Northcutt was sentenced before this amendment.

6

compelling reason." U.S.S.G. § 1B1.13(b)(6).  Multiple federal district courts, including this Court, have relied on this policy statement to conclude that the non-retroactive change to § 924(c) can make for an extraordinary and compelling reason to reduce a sentence, but only if the defendant's individual circumstances and other relevant factors also support that conclusion.  *See, e.g.*, *United States v. Salinas*, No. 1:08-cr-00338 JLT, 2026 WL 158640, at \*5 (E.D. Cal. Jan. 21, 2026) (collecting authority).

In Northcutt's case, the robberies underlying his § 924(c) conviction in this Court occurred in October and November 1995.  The robbery underlying his conviction in the Central District occurred later, in December 1995.  But the charges in the Central District case were brought to a verdict and judgment first—before he was sentenced in this District—so his conviction in this district was his "second" under the former version of § 924(c).  If Northcutt had been sentenced today, the question would be instead whether the "violation" underlying the changes against him occurred after his Central District conviction became final.  The obvious answer is no.  The "violation," the armed robbery, occurred in 1995, and his Central District conviction became "final" in 1996.  The government does not argue otherwise.  Under the amended version of § 924(c), the consecutive minimum sentence would be five, seven, or ten years instead of twenty, depending on what Northcutt did with the firearm during the robbery.

Northcutt argues he would have received only a five-year consecutive sentence under § 924(c)(1)(A), ostensibly for possessing a firearm in furtherance of armed robbery.  (Doc. 67 at 3, 13–14.)  As summarized above, however, the government states without contradiction that Northcutt "pointed a gun" at bank tellers and other bank employees during all three robberies and "discharged" a gun twice during the robbery in San Bruno, citing the presentence report prepared in this case.  (Doc. 71 at 2 (citing PSR ¶¶ 19, 22, 24).)  Northcutt has not offered any reason to doubt that his discharging of a firearm during an armed robbery would subject him to a minimum consecutive sentence of ten years under § 924(c)(1)(A)(iii) and (D)(ii).  This change would lead to a total sentence of 271 months (rather than 391) on the three robberies that are a part of the cases in this District.  Because 31 months of that sentence would still have run concurrently with the sentence imposed in the Central District Court, he would have been sentenced to 240 months

in connection with the three robberies. In total, taking all four robberies into account, he would have received a sentence of 370 rather than 490 months, a reduction of about 25%.

That disparity is not as gross as others that have led courts to find "extraordinary and compelling reasons." (*See, e.g.*, Doc. 67 at 10–11 (collecting authority disparities of multiple decades)); *see also Salinas*, 2026 WL 158640, at *4–5 (collecting similar authority and finding a twenty-year disparity justified relief under § 3582(c)(1)(A)). The Court will nevertheless assume without deciding that a ten-year disparity that amounts to nearly a quarter of the total sentence is a "gross" disparity for purposes of the Sentencing Commission's policy statement in section 1B1.13(b)(6). The court will also assume without deciding that Northcutt's sentence is "unusually long" for purposes of the same policy statement. The question is thus whether a "full consideration of [Northcutt's] individualized circumstances" shows there is "an extraordinary and compelling reason" to reduce his sentence. U.S.S.G. § 1B1.13(b)(6). It does not.

First, the consecutive minimum sentence Northcutt received in this case made up a little less than half of the total sentence Northcutt received for the four robberies. In comparison, under the modern sentencing statute, his consecutive minimum sentence would account for about a quarter of his total sentence, as detailed above. District courts within the Ninth Circuit, including this Court, have denied motions based on disparities that did not drastically increase the sentence in comparative terms. *See, e.g.*, *United States v. Green*, No. 00-05339, 2022 WL 1129011, at *6 (E.D. Cal. Apr. 15, 2022), *aff'd*, No. 22-10102, 2022 WL 17102359 (9th Cir. Nov. 22, 2022).

But even if the disparity were more significant, it would not justify a reduction in and of itself. *See, e.g.*, *United States v. Newton*, No. 94-05036, 2022 WL 3029332, at *4 (E.D. Cal. Aug. 1, 2022). Northcutt was in his late twenties when he committed the four robberies, "hardly a youth," and he has not supported his motion with evidence of his successful rehabilitation over the intervening years. *See id.* His 2004 assault charges, the resulting conviction, and his lengthy record of prison discipline weigh against him most prominently. He argues in his pro se filings that he has completed a great deal of coursework, has spent "hundreds of hours on changing how he thinks," and has "studied the law and medicine," but he does not offer evidence to support

8

these statements.  (Docs. 60 at 3; 68 at 6–7; 77 at 4; *but see* Doc. 77 at 9 (reproducing self-taught original artwork).)  He also appears to blame the victim of his 2004 assault charges for that crime, and he excuses his more recent prison disciplinary charges on the basis of unfounded conspiratorial accusations against the Bureau of Prisons and prison staff.  (*See, e.g.*, Docs. 68 at 6–7; 77 at 1–2.)  In this way, Northcutt's case differs markedly from those in which courts have granted relief under § 3582(c)(1)(A) based on changes to § 924(c).  *See generally, e.g.*, *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020); *United States v. Smith*, 538 F. Supp. 3d 990 (E.D. Cal. 2021).

Northcutt also argues in his pro se filings (but not in the brief submitted by counsel on his behalf) that he has received inadequate medical treatment within the prison.  (*See, e.g.*, Docs. 60 at 9–10; 68 at 2–4; 77 at 2–3.)  The Court has reviewed his medical records, which were filed under seal.  They show the Bureau of Prisons has treated him for a variety of chronic and non-chronic conditions over the years; the government has even agreed in a written settlement agreement to "provide him medically necessary treatment."  (Doc. 68 at 9.)  On the current record, Northcutt has not demonstrated that inadequate medical care creates "extraordinary and compelling reasons" for a sentence reduction in his case.

Finally, the Court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  Northcutt does not address these factors in the supplement or reply filed by his counsel.  He refers to them only indirectly in his pro se filings.  (*See, e.g.*, Doc. 77 at 4.)  It is Northcutt's burden to show those factors weigh in his favor.  *See Wright*, 46 F.4th at 951.  He has not done so.  Several factors weigh against him.  These factors include the nature and circumstances of the original robberies, the need for the sentence to reflect the seriousness of his offense, the need to deter criminal conduct, the need to protect the public, and the needs for educational and vocational training.  *See* 18 U.S.C. § 3553(a)(1), (a)(2).  As summarized above, the robberies were violent and Northcutt's actions were dangerous, and he has not offered evidence to show he has completed successful rehabilitative and educational efforts within the prison system.  The need to avoid unwarranted sentencing disparities does weigh in his favor, *see id.* § 3553(a)(6), but on the current record, the relevant factors weigh

against a reduction on the whole.

## CONCLUSION

The motion for a sentence reduction (Doc. 60 in Case No. 96-cr-5067 and Doc. 9 in Case No. 97-cr-5033) is **DENIED**.

IT IS SO ORDERED.

Dated:    **February 4, 2026**

_Jennifer L. Thurston_
UNITED STATES DISTRICT JUDGE

10